GEORGE W. WALKER ET AL. v. W. T. DICKEY.

Decided November 2, 1906.

**1.—Juror Disqualified as Witness.**

Article 3141 Revised Statutes provides that a witness in any case shall be disqualified to serve as a juror in such case. When, upon the trial of a case, the defendant called as a witness, upon a material issue, one of the jurors who had been impaneled to try the case, to the testimony of which witness the plaintiffs objected on the ground that, being a juror, he was not a competent witness, which objection was by the court overruled, and the witness allowed to testify; but afterwards, by the consent of both parties, the juror was excused from the panel and the trial proceeded with eleven jurors, held, not error to overrule plaintiff's application for continuance based on the admission of said testimony.

**2.—Fraud—Material Testimony.**

Where the genuineness of a contract dated in 1895 was a vital issue in the case, and the defendant testified that, under the terms of said contract, she bought lumber from a certain party and made improvements in 1895 on the land in controversy, the testimony of said party that he was not in the lumber business in 1895, and that the date of his billhead containing the items of lumber exhibited by defendant had been changed from 1897 to 1895, was material upon the issue of fraud and forgery.

**3.—Purpose of Testimony—Answers of Counsel.**

When counsel for plaintiff, in answer to questions by the court as to the purpose of testimony offered, replied in the hearing of the jury that it was offered for the purpose of contradicting the defendant, and to show that there

was absolutely nothing in her defense, and that it was entirely fictitious, the defendant was not prejudiced by such replies, since plaintiff alleged in his pleading that the contract on which defendant relied was a forgery.

**4.—Charge—Burden of Proof.**

In cases in which evidence is introduced upon the issues *pro* and *con* by the respective parties there is no occasion for an instruction upon the burden of proof; the question then is merely one of preponderance of the evidence.

**5.—Special Issues—Sufficiency**

The plaintiff, in trespass to try title, relied on his superior title as vendor to recover the land in controversy; the defendants relied on a contract by which they were to have title to the land on certain conditions, which had been performed; the issue was as to the genuineness of the contract. If the contract was a forgery the defendant could have no equities under the same to adjust, and the court did not err in instructing the jury that they need not answer other special issues concerning such equities if they found that said contract was a forgery.

**6.—Depositions not Responsive—Hearsay.**

When the answers of a witness are not called for nor responsive to the interrogatories, and it is evident that the answers are hearsay, they should be suppressed on motion.

**7.—Forgery—Circumstantial Evidence.**

When a contract relied on by defendants is attacked by the plaintiff as a forgery, the fact that one of the defendants was not in the courtroom during the trial and evaded the service of a subpoena by the plaintiff was not an immaterial circumstance under the facts of this case.

**8.—Payment of Money—Insolvency—Rebuttal.**

When the defendant claims to have paid a large sum of money in the purchase of the land in controversy at a certain time, the fact that she was obliged to vacate a house for the nonpayment of rent about the same time was not immaterial evidence in rebuttal.

**9.—Express Contract—Pleading—Proof.**

When a party alleges an express contract it is not proper to submit an issue of *quantum meruit*.

**10.—Costs—Judgment Against Wife.**

When the suit is against the husband and wife on a community obligation a judgment against the wife as well as the husband, for costs, is error, but not such under the circumstances of this case as will cast the appellee in the cost of appeal.

**11.—Trivial Errors—Affirmance.**

Even though a record be not entirely free from error, still, when the errors are few and trivial, and the judgment reflects the very right and truth of the matter, the Appellate Court will not remand the case for a new trial.

**12.—Conclusions of Fact—Statute Construed.**

Article 1024a, Revised Statutes, as amended by the Twenty-ninth Legislature, simply requires the Courts of Civil Appeals "to decide all issues presented to them by proper assignments of error." This does not mean that the Appellate Courts should set out in full the evidence admitted or excluded, with the objections made thereto, in passing on questions of fact. This might be done by the plaintiff in error in his application to the Supreme Court, if deemed necessary to a proper understanding of the case.

Appeal from the District Court of Harris County. Tried below before Hon. Chas. E. Ashe.

*Baldwin & Christian,* for appellants.—After the juror, Ware, was

used as a witness by the plaintiff the court should have granted defendant's motion to continue the case. Sayles' Revised Statutes, art. 3141; Mundine v. Pauls, 28 Texas Civ. App., 48; Ford v. Liner, 24 Texas Civ. App., 354; Cotton v. Lyter, 81 Texas, 11; Brown v. Sullivan, 71 Texas, 477; Delmas v. Margo, 25 Texas, 1; Texas & Pac. R. R. Co. v. Barron, 78 Texas, 421; Dotson v. Moss, 58 Texas, 156; Kigo v. Jordan, 17 Texas, 346; Griffith v. Eliot, 60 Texas, 334.

The admission of improper or illegal evidence, over the objections of the appellant, is always reversible error, unless it clearly appears that the evidence improperly admitted had no effect upon the verdict of the jury prejudicial to the rights of the appellant, and that no injury could have resulted from the admission of the evidence. Phoenix Assurance Co. v. Munger Mfg. Co., 92 Texas, 296; Missouri, K. & T. R. R. Co. v. Hannig, 91 Texas, 349; Ft. Worth & D. C. Ry. Co. v. Greathouse, 82 Texas, 108; Eborn v. Zimpleman, 47 Texas, 522; Dewees v. Bluntzer, 70 Texas, 408; Kellogg v. McCabe, 92 Texas, 201; Hooks v. Pafford, 34 Texas Civ. App., 517.

The trial court erred in permitting the plaintiff to read in evidence the documents and instruments on file in the case of John Forrester v. W. T. Dickey, in the District Court of Harris County, Texas, for the reason that they were irrelevant and immaterial, in view of the admissions and pleadings of the case, and they proved no facts at issue in this case, and were calculated to confuse and mislead the jury; and the trial court erred in permitting plaintiff's counsel, in connection with the offering of said papers, to state, in the presence and hearing of the jury, that the object he had in offering the same was to contradict the testimony of the defendant, Eva W. Walker, and to show that there was absolutely nothing in their defense. Howard & Co. v. Parks, 1 Texas Civ. App., 605; Aetna Insurance Co. v. Eastman, 95 Texas, 34; Euless et al. v. Russell, 34 S. W. Rep., 176; Texas & P. Ry. Co. v. O'Mahoney, 50 S. W. Rep., 1051.

It was a reversible error for the trial court to remark, in the presence and hearing of the jury, that he would admit the testimony for the purpose of showing that the defendants' defense was a fictitious one. Smith v. Dunham, 9 Texas Civ. App., 321; Freiberg v. Beach, 63 Texas, 455; Dallas Consolidated, etc., Ry. Co. v. McAllister, 14 Texas Ct. Rep., 388.

The court erred in charging the jury that the burden was upon the defendants to establish by a preponderance of the evidence the facts set forth in their answer. Cross v. Kennedy, 66 S. W. Rep., 319; Hays v. Hays, 66 Texas, 609; Gulf, C. & S. F. Ry. Co. v. Hudson, 77 Texas, 497; Ft. Worth & D. C. Ry. Co. v. Hardin, 14 Texas Ct. Rep., 303.

The trial court erred in excluding from the jury the answer of the witness, Geo. W. Walker, Jr., to the sixth interrogatory, as follows: "I never saw the written contract executed. I know from hearing W. T. Dickey talk with my father and mother that he had sold to them the place in Dickey's West Park Addition of about 37 1-2 acres, it being the property on which my mother now lives, and I know that they had a written contract with reference to it. I remember hearing W. T. Dickey and my mother discuss these matters at one time when they both got mad. This was about Dickey making her a deed to the property,

and about the notes signed by my father. I don't remember fully the language that was used by the parties in that conversation, but I know that my mother claimed that she had paid Dr. Dickey all that she owed him; that she was entitled to a deed to the 37½ acres free from any lien."

The court erred in excluding from the jury the answers of the witness Pearl Lawson to the seventh, eighth and ninth interrogatories. To the sixth interrogatory the witness answered: "I never saw the contract mentioned in this interrogatory, but I, at one time, a short time before my marriage (other proof shows that the marriage occurred in 1900), saw a copy of this contract in the possession of my mother; that is a copy of the contract between W. T. Dickey and M. Dickey, and Geo. W. Walker and Eva W. Walker, with reference to selling to them certain lots and blocks in Dickey's West Park Addition. I know nothing with reference to the original transaction further than what I have heard the parties say, and from seeing a copy of the contract. I have often heard Dr. Dickey say that he had sold to my father and mother all the property that we have fenced and that part of blocks 17 and 18 south of the road, which we did not have fenced. I know that he and my mother, on several occasions, had some hot words about his executing a deed to the property, but I don't know where the original contract can now be found; that is, of my own knowledge."

The answer of the witness, Pearl Lawson, to the seventh, eighth and ninth interrogatories, which were excluded by the trial court, read as follows, to wit: To the seventh interrogatory the witness answered: "I have not got the contract in my possession. I never saw or read the original contract. I have seen and read a copy of the contract, which was a short time prior to my marriage (the witness was married in 1900). The circumstances under which I saw the same were that I found it among my mother's papers, and read it over, and I asked her about it, and she informed me that it was a copy of the contract with Dr. Dickey. The copy which I read is the same copy that I identify in my answer to the ninth interrogatory."

The answer of the witness to the eighth interrogatory was as follows: "I only know that my mother made a copy of the contract by what she told me, and by knowing that the copy is in her handwriting. I first saw this copy a short time prior to my marriage, and I don't know the circumstances under which this copy was made. I was off at school when the copy was made."

To the ninth interrogatory the witness answered: "I have the copy of the contract referred to in my possession at the present time. It is the same copy which I saw in the possession of my mother a short time prior to my marriage. I have written my name across the righthand corner of said contract, and also placed the date thereon; that is, the date of answering these depositions, and I have had the notary public who is taking my depositions to write his name across the lefthand corner of said contract, and sign it officially so that the same might be identified on the trial of this cause."

The trial court erred in rendering judgment against the defendant, Eva W. Walker, for costs of suit. Noel v. Clark, 60 S. W. Rep., 356.

*W. G. Love* and *G. J. Kapner,* for appellee.—There is no rule of law which renders a juror incompetent as a witness in the cause in which he has been empanelled. If it develops during the trial of a case that a juror has knowledge of facts material to the issues being tried before such jury, the proper practice is to have him sworn and examined as to all relevant facts within his knowledge. 30 Am. & Eng. Ency of Law, 2d ed., 933; Patterson v. Boston, 20 Pick. (Mass.), 159; Chattanooga Ry. Co. v. Owens, 90 Georgia, 266.

The appellants, having admitted the plaintiff's cause of action and assumed the affirmative of the issue, had the burden of proof with reference to the defenses set up by them, and it was not error for the court to charge the jury that the burden of proof was upon them to show the facts necessary to their recovery, by a preponderance of the evidence. Gulf, C. & S. F. Ry. Co. v. Howard, 96 Texas, 582; Chittim v. Martinez, 94 Texas, 141; Von Boeckman v. Loepp, 73 S. W. Rep., 849; Taylor B. & H. Ry. Co. v. Taylor, 79 Texas, 114; Western Union Tel. Co. v. Bennett, 1 Texas Civ. App., 558; Blashfield on Instructions to Juries, secs. 346-352.

The appellants not having admitted the contract of purchase, as pleaded by the appellee, and not having tendered the money necessary to perform the same into court, but having denied the validity of the executory contract of sale, and alleged affirmatively that all the improvements and payments made by them were made upon another and a different contract from that pleaded by the appellee, and having sought, by their pleadings, not to affirm said contract and have the same performed, but to avoid and defeat the same, were not in a position to have their equities adjusted with reference to their rights under the contract of purchase alleged by the appellee, which contract they repudiated and denied. Efron v. Burgower, 57 S. W. Rep., 306; Polk v. Kyser, 53 S. W. Rep., 87; Stone Cattle Co. v. Boon, 73 Texas, 555; Ufford v. Wells, 52 Texas, 617; Walker v. Emerson, 20 Texas, 708; Hild v. Linne, 45 Texas, 477; Estes v. Browning, 11 Texas, 246; Story's Equity Jurisprudence, sec. 776.

It was competent, as bearing upon the bona fides of the appellants' defence, and as tending to show a lack of good faith on the part of the appellant George Walker, with respect to the claim asserted by him in this suit, for the appellee to show that, although in the city of Houston, where the case was being tried, he was evading the process of the court and endeavoring to escape being placed upon the stand as a witness by the appellee, after his deposition had been prepared and filed in answer to such questions as his counsel saw fit to propound to him. Austin & N. W. Ry. Co. v. Cluck, 97 Texas, 172; Union Pac. Ry. Co. v. Botsford, 141 U. S., 255.

REESE, ASSOCIATE JUSTICE.—This is an action in trespass to try title by W. T. Dickey against George W. Walker and Eva W. Walker, his wife, to recover a number of blocks of ground in Dickey's West Park Addition to the city of Houston. In addition to the usual allegations in trespass to try title as to all of the property sued for, appellee alleged that on April 1, 1899, he sold and conveyed to George W. Walker block No. 17, being one of the blocks sued for, reserving in

such conveyance an express vendor's lien upon the land conveyed to secure the purchase money which was evidenced by 105 promissory notes for $30 each executed by said Walker, payable one each month after, date thereof until they were all paid. There was a stipulation that failure to pay any five of the notes should, at the option of the holder, mature them all.

It was alleged that a deed of trust was also executed to secure the payment of the notes, and sale made thereunder, at which sale appellee became the purchaser, but it was agreed upon the trial that no title passed by this sale and so far as block 17 is concerned appellee seeks to recover upon his superior title, alleging that after paying 26 of the notes appellant Walker made default as to the others, that more than five of them were overdue and appellee exercised his option to declare them all due.

Appellants answered that appellee had a good cause of action and was entitled to recover except insofar as such right might be defeated in whole or in part by the facts set up in the answer, which are as follows, as set out in appellants' brief:

That on April 10, 1895, the plaintiff, W. T. Dickey, while acting for himself and M. Dickey, entered into a contract with the defendants, the said plaintiff W. T. Dickey then being the real owner of said property, and the title thereto standing in the name of M. Dickey in trust for W. T. Dickey. The terms of said contract are set up fully and a copy of the contract attached to the answer as "Exhibit A," the copy so attached being as follows, to wit:

"Houston, April 10, 1895.

"It is agreed by and between Eva W. Walker, acting for herself and husband, Geo. W. Walker, and W. T. Dickey, acting for himself and M. Dickey, as follows:

"1. That W. T. Dickey is the owner of blocks 65, 66, 67, 68, 5, 6, 7, 8, 17 and 18 in what is known as Dickey's West Park Addition to the city of Houston (being the property sued for) and that the recorded title to a part of these blocks stands in the name of M. Dickey, and therefore he joins in this contract.

"2. That W. T. Dickey and M. Dickey have this day sold the above described blocks to Eva W. Walker for $2,400, the receipt of which is hereby acknowledged.

"3. It is understood that Eva W. and Geo. W. Walker will fence that part of the land lying between San Felipe and the Westheimer roads, and will, during the year 1895, build a house upon block 17 which shall cost not more than $2,100, and that they will occupy same for at least five years.

"4. It is understood that W. T. Dickey will furnish the money with which to build the house, and will keep an account of all sums paid; and, after the house is completed and paid for, will deliver unto Eva W. Walker an itemized statement showing amounts paid by him, which shall be paid by Eva W. and George W. Walker as follows: Eva W. and George W. Walker shall execute their notes for the amount, including 4 percent interest thereon, for a period of five years, making a total sum of $2,520, which shall be made payable in monthly payments

of $30 per month, and shall, from time to time, pay on the notes such sums as they may feel able until they shall have paid as much as $720 in cash, the remaining $1,800 shall be paid in the following manner:

"Eva W. and Geo. W. Walker agree to board W. T. Dickey for a period of five years from the time they move into the house, and to reserve for him during that time one room in the house and shed room on the place for his horse and buggy, for which he agrees to pay the sum of $30 per month, to be applied to the payment of one note each month during the five years; and it is understood that, if Eva W. and George W. Walker carry out their part of this contract, they shall, at the end of five years, or so soon thereafter as they shall have paid the $720, have a deed to all the blocks mentioned herein free from any lien whatever or claim of M. Dickey or W. T. Dickey, for purchase money, or for money furnished with which to build the house."

"(Signed) W. T. Dickey,<br>
M. Dickey,<br>
By W. T. Dickey.<br>
Eva W. Walker,<br>
Geo. W. Walker."

That the defendants complied strictly with their part of said contract, while plaintiff only partially complied with his part thereof, setting up fully the acts and things done by each party in furtherance of said contract.

That the defendants paid bills for the plaintiff, as a payment on the cost of the house, for material that went into said house, to the amount of $251.53, as shown from an itemized statement of said bills attached to the answer as "Exhibit B."

In addition to said bills that they paid in April, 1895, to January 14, 1897, $829.80, which amount was to be applied as a credit on the cost of said house until the cost, or the amounts due by the defendants to the plaintiff, was extinguished, and the remainder he was to repay the defendants, which he has failed to do; an itemized statement of said payments was attached to said answer as "Exhibit C."

They alleged the payment of other items from March 6, 1897, to June 2, 1899, to the amount of $210, and the payment of other sums for which they had no vouchers, etc. They made a restatement of all payments made by them to the plaintiff.

That when the notes described in plaintiff's petition were executed, they owed the plaintiff nothing, and the notes were executed without consideration; that they were accommodation notes, and included no part of the purchase money of the land or cost of the house; that it was understood and agreed at the time the notes were executed that the plaintiff would return them to the defendants and release the land from the lien created thereby so soon as he was able to remove other incumbrances, etc.; that at the time of the execution of said notes, the property was the homestead of the defendants, and the lien, if any, attempted to be created thereon was void. That after the execution of the notes, the plaintiff led the defendants to believe that they would have to pay the same, and they paid twenty-six of said notes, and they are entitled to a judgment against the plaintiff for this sum.

That the sale mentioned in plaintiff's petition of block No. 17 under the deed of trust therein mentioned, was void, for the reason that the defendants owed the plaintiff nothing when the sale was made, and for the further reason that the property was their homestead at the time of the execution of said notes, and at the time of the making of said sale, and that such substitute trustee, who attempted to make such sale, had no power or authority to make the same, or to act under the deed of trust.

That on or about April 15, 1898, the plaintiff agreed to allow and to pay the defendant Eva W. Walker $1,000 for services performed by her in procuring from John Forrester the release of a certain judgment held by him against the plaintiff; that, if the defendants owed the plaintiff anything on the notes mentioned in plaintiff's petition, they should be credited with this amount due by the plaintiff to the defendant for the services aforesaid.

That the defendant, Eva W. Walker, acted as agent for the plaintiff from January, 1901, to January, 1904, in managing and looking after his property, giving and furnishing him certain information, for which he agreed to pay the defendant such sum as said services might be reasonably worth. That afterwards, on or about December 28, 1903, the plaintiff agreed with the defendant that said services were reasonably worth $800; defendants alleged said services to be worth said sum and prayed judgment for such amount.

Appellee by supplemental petition denied all the allegations of the answer and pleaded the statute of limitations of two and four years to the money demands set up in the answer. He also denied under oath the execution of the contract set out in the answer and charged that the same was a forgery.

By supplemental answer appellants pleaded that the payments set out in the answer should be applied to whatever sum, if any, appellants owed appellee, and further pleaded, in reply to the plea of the statute of limitation that appellee left the State of Texas in 1900, and has continuously, since that time, been a resident of Oklahoma Territory.

The case was submitted to the jury upon special issues. The fourth question propounded to the jury was as to whether W. T. Dickey, on or about April 10, 1895, for himself and M. Dickey, signed, executed and delivered the contract set out in appellants' answer. If this question was answered in the negative the jury were instructed not to answer the succeeding questions, 22 in number. The jury answered this fourth question in the negative and, as instructed, did not answer the succeeding questions.

In their answer to the first question the jury found that Eva W. Walker had acted as agent for W. T. Dickey, as set out in the answer, but in their answer to the second question found that there had been no agreement to allow her any particular amount for her services as alleged by her. Upon this verdict judgment was rendered for appellee Dickey for the land sued for, from which Walker and wife appeal. None of the assignments attack the verdict as being contrary to, or unsupported by the evidence.

During the trial of the cause, and after appellants, who assumed the burden of proof and took the opening upon the evidence, had closed,

and while appellee was introducing his evidence, he offered the testimony of William Ware, who was one of the jurors impanelled and sworn in the case. Appellants objected to the testimony of this witness on the ground that he was not a competent witness being one of the jurors impanelled, and further that the testimony was immaterial and irrelevant. The objection was overruled and the witness allowed to testify, whereupon appellants filed a motion praying to be allowed to withdraw their announcement of ready and that the cause be continued, on the ground that they had not been advised, when the jury was impanelled that any issue would arise that would require the testimony of said William Ware, and that it would be prejudicial to her to try the case before a jury of which said Ware was a member.

When this application was made to the court counsel for appellee announced to the court that he was willing that William Ware be excused from the jury and that the trial of the cause proceed with eleven jurors. Thereupon the court asked appellants' counsel if they were willing that the juror be excused as suggested, to which they answered that they were, but that this could not and would not remove the poison that had been injected into the minds of the jurors by reason of the testimony of the said Ware and by reason of the acts and conduct of appellee in presenting the juror as a witness. The court then excused the juror and the trial proceeded with eleven jurors. To the action of the court in overruling his objection to the testimony of Ware, and in refusing to allow them to withdraw their announcement of ready and a continuance of the cause appellants excepted and the points involved are presented in the first and second assignments of error.

It is provided by statute that a witness in any particular case shall be disqualified to serve as a juror in the case. (Rev. Stats., art. 3141.) The reason of this provision is obvious. A juror could not fairly and impartially pass upon his own credibility and the weight which should be given his own testimony, hence the provision that he should not be both witness and juror in any particular case.

When Ware was excused from the jury, by the consent of both parties, the purpose of the statute was fully accomplished. Whatever harm may have resulted from his having testified before he was discharged as a juror was fully cured by his discharge. Having been taken off the jury the case stands substantially as though he had never been impanelled as a juror. It was entirely proper to excuse the juror with the consent of the parties, and to proceed with the trial with eleven jurors, and this action of the court is not complained of. The action of the court in overruling appellants' objection to the testimony of the witness on the ground that he was a member of the jury and in refusing to allow him to withdraw his announcement of ready and continue the cause, in the circumstances stated, was not reversible error. The testimony was both relevant and material, in view of the testimony of Mrs. Walker for appellants. The controlling issue in the case was whether appellee had executed the contract of April 10, 1895, which was the basis of appellants entire defense, or whether the same was a forgery as claimed by appellee. Germane to this issue was the evidence of Mrs. Walker that she built the house on block 17 under said contract, in

1895, and paid out certain money in doing so, one of the items so alleged to have been paid being a bill of lumber purporting to have been bought of the witness, William Ware, on May 5, 1895, or as shown by the bill "5|5|95." The testimony of Ware was in substance that he was not in the lumber business until 1896; that the billheads upon which the bill was made out were not printed until after that date and his testimony tended further to show that the bill had been made out in his handwriting, but originally date "5|5|97" and the "7" had been erased and "5" written in, not in his handwriting. The issue presented involved necessarily the question of fraud on the part of appellants, and particularly Mrs. Walker, and the testimony was admissible both to contradict her as to this bill having been paid by her under the contract of 1895, and as tending to show fraud on her part in connection with the transaction. The testimony of Medlenke who printed the billheads as to the time when this was done, while quite inconclusive and of little weight, was admissible for the same reason. This disposes of the first, second and third assignments of error.

Appellants claimed that appellee owed Mrs. Eva Walker $1,000 which he had, on or about April 15, 1898, agreed to pay her for her services in procuring from John Forrester the release of a certain judgment against appellee in favor of Forrester. Appellee had bought a large tract of land from Forrester, of which the land sued for was a part, and after certain parts of the land had been paid for and the vendor's lien released, Forrester sued for the balance due and procured a judgment against appellee. This judgment was afterwards settled by appellee reconveying the land not released and Forrester receipting the judgment. Mrs. Walker testified to the employment of herself and the performance of the services by her, all of which was denied by Dickey. In this state of the evidence counsel for appellee was allowed, over the objection of appellants, to introduce in evidence a large part of the record of the suit of Forrester v. Dickey, and to testify as to how the settlement had been brought about, which testimony tended to show that Mrs. Walker had had nothing to do with it, but that it had been arranged by and between W. G. Love, attorney for Dickey, and E. P. Hamblen, attorney for Forrester. The testimony certainly tended to show these facts, and that Mrs. Walker had had nothing to do with the settlement. We think it was altogether unnecessary to encumber the record with the great mass of testimony upon this point and that much of it might very well have been eliminated, but the objection goes to the entire evidence and the fourth assignment of error presenting the point must be overruled.

Appellants complain that the trial court erred in permitting appellee's counsel to state in the presence and hearing of the jury that the object of this evidence was to contradict Mrs. Walker and to show that there was absolutely nothing in her defense and that it was entirely fictitious. This statement of counsel was made in response to inquiry by the court as to the object of the evidence. It is difficult to see how the statement could have prejudiced appellants. Appellee had pleaded that the contract upon which rested appellants whole case was a forgery. Appellee's entire defense to appellant's claim involved and necessarily presented, in an emphatic way, the charge of fraud on the part of

appellants, and that their alleged defense was a fictitious, that is, a manufactured defense. The statement that the purpose of the evidence offered was to establish this fact could not have prejudiced appellants. It is true that this statement was made by appellee's counsel several times; five times as claimed by appellants in their brief and assignments of error; but each time, except possibly once, it was in answer to inquiry of the court as to the object of certain testimony. Counsel could not have answered the court's question truthfully without making the statement objected to. The testimony, the admission of which is complained of in the fifth, twenty-fourth and twenty-fifth assignments of error with reference to the settlement with Forrester, is of the same general character as that above referred to and was offered for the same purpose. There was no error in admitting it.

There was no reversible error in admitting the testimony of George Berleth, offered by appellee, that he bought blocks 19 and 20 and all of block 18 lying south of the Westheimer road in 1904 and that he placed a fence around it; that Mrs. Walker passed frequently while he was building the fence and made no objection. The witness further testified that at the time he put up the fence he had never heard anything of any claim by appellants to the property. Block 18 was one of the blocks embraced in the alleged contract of April 10, 1895. It seems that at the time referred to this suit was pending, but the record does not show that at that time appellants' pleadings disclosed their claim to block 18 as now set up by them. The evidence does not appear to us to be material, but in view of its trifling character and the mass of evidence in the record tending to support appellee's contention as to the contract of April 10, 1895, we do not think that its admission presents reversible error.

The seventh assignment of error assails the charge of the court upon the burden of proof, which was as follows:

"The legal effect of this admission is to relieve the plaintiff of the necessity of making any proof with reference to the matters alleged in his petition, and to place upon the defendants the burden of establishing by the preponderance of the evidence the facts set forth in their answer, or such facts as might be necessary to constitute a defense in whole or in part, and all questions hereinafter propounded to you by the court which can be answered "Yes" or "No" will be answered by you in the negative, unless you believe from a preponderance of the evidence deemed credible by you that same should be answered in the affirmative."

Evidence was introduced by the parties respectively tending to establish and to disprove appellants defense based upon the alleged contract of April 10, 1895, and the occasion did not arise for a declaration upon whom the burden of proof rested (Stooksbury v. Swan, 85 Texas, 566). It was sufficient to instruct the jury that the admissions of appellants relieved appellee of the necessity of proving the allegations of his petition and that the issues should be decided upon a preponderance of the evidence deemed credible by the jury. The preponderance of the evidence, taken as a whole, however, supports the finding of the jury and it is clear that they were not misled by the charge upon the burden of proof.

The fourth question propounded to the jury by the charge was as follows:

"Do you believe from the evidence that the plaintiff, W. T. Dickey, on or about April 10, 1895, for himself and M. Dickey, signed, executed and delivered the contract alleged in the defendants' answer, a copy of which is attached to said answer and marked "Exhibit A."

"You will let your answer be 'Yes' or 'No' as you may find the facts to be."

The jury were then instructed that in the event they answered the fourth question in the affirmative, and only in that event, they should answer the succeeding questions, twenty-two in number.

It is assigned as error that all of these questions should have been answered and several assignments are predicated upon the failure to require the jury to answer certain specific questions among those not answered. It is urged that it was necessary to a proper adjustment of the equities of the parties that these questions should have been answered.

We will not undertake to discuss each of these assignments separately. All of the questions embraced in the charge, which the jury were instructed not to answer in case they found that the contract of April 10, 1895, was never executed by appellee, were predicated upon the validity of that contract. If the several sums of money alleged to have been paid by appellants to appellee were not paid upon that contract or if they were not entitled to be credited with the same upon it, they were all, as independent claims against appellee, or as offsets to the amount due on the notes, barred by limitation, which had been pleaded against them, and could not be considered. There were no equities to be adjusted except such as might have grown out of, and been based upon the contract of 1895.

Appellee sued upon his superior title growing out of the unpaid purchase money and the express lien reserved to secure the same, and it was admitted by appellants that he was entitled to recover thereon unless barred by the defense pleaded. This defense rested wholly upon the alleged contract of 1895. Having asserted their right to the land under this contract, and that the unpaid purchase money notes executed by them were given without consideration and for the accommodation of appellee, and having fought the case out on these issues, there were no equities to be adjusted growing out of the matters embraced in the questions not answered, when the answer of the jury to the fourth question negatived the existence of the contract, the only basis for such equities.

The claim for $1,000 in favor of appellants growing out of the alleged services of Mrs. Walker in procuring the settlement with Forrester was clearly barred by limitation as an independent claim or debt against appellee. The jury having found that the alleged contract of 1895 had never been executed, all of the claims and demands against appellee became merely independent items of indebtedness and were, on their face, barred by limitation except the item of indebtedness for services of Mrs. Walker as agent of appellee, which was submitted to the jury in the first, second and third questions, and will be hereafter referred to. The court did not err in instructing the jury not to answer the succeed-

ing questions in the event that the fourth question was answered in the negative. This disposes of the assignments of error from 8 to 19 inclusive.

There was no error in excluding that portion of the answers of the witnesses George W. Walker, Jr., and Pearl Lawson to certain interrogatories, as set out in the twentieth, twenty-first, twenty-second and twenty-third assignments of error. The objection was made that these answers were not responsive to the respective interrogatories and that it appeared from the answers themselves and answers of the witnesses to other interrogatories that the testimony was hearsay. That portion of the answer of George W. Walker, Jr., to the sixth interrogatory which was excluded was clearly not responsive to the interrogatory. There was nothing in the interrogatory to indicate that the witness was expected to testify as to anything said by W. T. Dickey with relation to the contract. His answer shows that he knows nothing otherwise with regard to the written contract about which he is interrogated. The answer of Mrs. Lawson to the seventh interrogatory, which was excluded, is not responsive to the interrogatory. She is not asked about a copy of the contract, but the original and the question did not disclose that she was expected to testify with regard to a copy to which alone her answer is addressed. (Article 2291, Revised Statutes; Lee v. Wilmerding, 57 Texas, 449.) Her answer to the eighth interrogatory is clearly hearsay. The answer of the witness to the eighth interrogatory shows that she does not know, except by hearsay, that the instrument which in her answer to the ninth interrogatory she speaks of and identifies as a copy of the contract is in fact a copy. The testimony was properly excluded.

There is no merit in the twenty-sixth assignment of error. The evidence objected to tended to show that the appellant, George W. Walker, was in the city of Houston for several days during the progress of the trial, and that he not only made no appearance in the courthouse, but that appellee was unable to have a subpoena served upon him, and tends to support the inference that he left the city to avoid appearing in the court. We think that in the circumstances disclosed by the record appellee was entitled to have the facts appear as disclosed by the evidence objected to. The objections to the remarks of counsel embraced in the assignment of error is without merit. The statement of counsel as to the object of the testimony was in response to the inquiry of the court.

The materiality of appellee's bank pass books as evidence is not apparent to us. This testimony was introduced by appellee over the objection of appellants that the same was immaterial and irrelevant, and that the books were not books of original entry and there was no proof that they were properly kept. This evidence occupies 21 pages of the record to no purpose whatever so far as we can see. Appellee in his brief makes no reference to the assignments of error presenting the point, and no attempt to show the materiality of the evidence. It is possible that there is something in the record of 490 pages that discloses its materiality. We can not conceive, however, that the admission of the evidence was prejudicial error. Appellants have not shown in

their brief wherein the evidence could have been harmful and if it is, as it appears to us, immaterial to any issue in the case its admission does not present reversible error.

In view of Mrs. Walker's testimony as to the payment of $2,400 in cash to appellee under the contract of 1895, and the issue as to her ability to raise so much money, it was not error to allow appellee to introduce evidence as to her inability to pay her house rent just prior to that time, and the fact that she was compelled on that account to vacate the house in which she was living.

The testimony referred to in the twenty-ninth assignment of error was admissible and the objection that the question was leading can not be sustained.

There was no error in refusing to submit to the jury the question of the reasonable value of the services of Mrs. Walker in acting as the agent of appellee. Insofar as this matter is involved, appellants sued upon an express contract with appellee that he was to pay Mrs. Walker $800 for this service. The jury found that Mrs. Walker acted as appellee's agent as claimed, but that there was no express contract to pay her anything. Having sued upon the express contract appellants were not entitled to recover upon a *quantum meruit* the value of the services.

What has been heretofore said in this opinion with regard to the adjustment, in this suit, of the equities of appellants growing out of the contract of 1895 renders it unnecessary to further discuss the thirty-first assignment of error.

There is no merit in the thirty-second assignment. As has been before said, unless the different items pleaded by appellants can be considered as payments under the contract of 1895, they were clearly barred by limitation.

The judgment for costs against Mrs. Eva Walker was error. As the judgment stands it is a matter of some doubt whether it would not authorize an execution to be satisfied out of her separate estate. (Howard v. North, 5 Texas, 299; Linn v. Willis, 1 Posey's Texas U. C., 166; Taylor v. Stephens, 42 S. W. Rep., 1049.) To avoid all questions on this point the judgment will be reformed as to costs so as to include George W. Walker alone. We do not think that on this account the costs of their appeal should be taxed against appellee.

The writer has found it impossible to pass upon each of the thirty-three assignments of error with a less consumption of space. The record presents a great mass of testimony, much of it appearing to us to have been unnecessary, or where necessary, to have been susceptible of very great abridgment.

While we can not say that the record presents the case of a trial free from error, it does in our judgment present a case wherein the judgment reflects the very right and truth of the matter.

We are not disposed to reverse it and send the case back for another trial for the few trifling and harmless errors which may possibly have crept into a trial covering so much ground. The judgment therefore as reformed in the matter of costs, is affirmed.

ON REHEARING.

Appellants, in this motion, call our attention to an error in the statement in the opinion with reference to the matter complained of in the fourth assignment of error. The alleged error pointed out in this assignment was the admission in evidence, over objection of appellant, of certain documents pertaining to the suit of Forrester v. Dickey, the purpose and effect of which is explained in the opinion. In passing upon this matter the statement is made that the objection of appellants "goes to the entire evidence." This was error. In fact each piece and parcel of the evidence was objected to by appellant, the ruling of the court thereon being embraced in one bill of exceptions.

In the motion for rehearing this court is requested, in all cases where assignments of error are addressed to the improper admission or exclusion of evidence, to file additional conclusions of fact, setting out in full the evidence admitted or excluded, with the objections made thereto. To comply fully with appellants request would require us to copy many pages of the record to no useful purpose so far as we can see. We have endeavored, in the opinion, to give in each case the general character of the testimony and the objections thereto. Counsel for appellants seem to be of the opinion that it is necessary for us to file such additional conclusions in order that the Supreme Court may intelligently pass upon the application for a writ of error. If this were so the request would be complied with, but in this appellants are in error. If it is deemed by appellants necessary for a proper understanding by the Supreme Court of any errors committed by this court, that the matters which we are asked to add to our opinion should be fully shown, this may be done in the application for a writ of error to that court. The opinion shows the ruling made by this court upon each assignment of error. The application for a writ of error may properly set out a full statement from the record of all matters contained therein necessary for a full and clear understanding of the rulings of this court.

Appellants seem also to be of the opinion that the provisions of article 1024a as amended by chapter 51, Acts of the Twenty-ninth Legislature, make it our imperative duty to file such additional conclusions as we are requested to file in the motion for rehearing. This is a misapprehension of the tenor and effect of this act, which only requires Courts of Civil Appeals "to decide all issues presented to them by proper assignments of error, . . . whether such issues be of fact or law and announce their conclusions in writing." It is further provided that "if the Court of Civil Appeals has failed to file a conclusion of fact upon any material issue in the case properly assigned in that court and in the Supreme Court, and that by reason of such failure the Supreme Court is not able to pass upon such assignment, it shall be the duty of said Supreme Court to return the record to the Court of Civil Appeals from which it came with directions to make and file a conclusion of fact upon each of such issues and to return the same, with the record, to the Supreme Court."

This last provision, however, does not refer to such additional conclusions as appellants request us here to make, which are not conclusions of fact at all, but the evidence in full, and bills of exceptions in full,.

embraced in the assignments of error upon the admission or exclusion of such evidence. Having made the correction in our opinion herein referred to appellants' motion is otherwise overruled.

*Reformed and affirmed.*

Writ of error refused.